1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE PHILLIPPI, aka, Robert M. Ray,<br><br>Petitioner,<br><br>v.<br><br>DR. JEFFREY BEARD, Secretary,<br><br>Respondent. | Case No.: 14cv1310 DMS (MDD)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE:<br><br>1) PETITIONER'S MOTION TO AMEND THE PETITION; and<br><br>2) RESPONDENT'S MOTION TO DISMISS<br><br>[ECF Nos. 10, 20] |

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** Petitioner's motion to amend the Petition be **GRANTED**, and further **RECOMMENDS** Respondent's motion to dismiss the Petition be **GRANTED**.

1

# I.    Procedural Background

Bruce Phillippi[1] ("Petitioner"), is a state prisoner proceeding pro se and in forma pauperis.  (ECF No. 6).  On May 19, 2014, Petitioner constructively filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1; *see also* ECF No. 34 at 1:11-12).  On October 10, 2014, Respondent Jeffery Beard filed a motion to dismiss the Petition.  (ECF No. 10).  On October 24, 2014, Petitioner filed an opposition to Respondent's motion to dismiss.  (ECF No. 12).

On May 14, 2015, this Court held a case management conference to discuss the need to develop the record with respect to the issue of equitable tolling.  (ECF No. 17).  In an order following the case management conference, the Court required the litigation coordinator at Petitioner's place of confinement to afford him prompt access to his files, and set a briefing schedule for the parties to provide supplemental briefing and evidence on the issue of equitable tolling.  (ECF No. 18).  At the Respondent's request, the Court extended the dates for supplemental briefing.  (ECF No. 31).  Petitioner and Respondent each timely filed supplemental briefs and evidence concerning equitable tolling.  (ECF Nos. 23 (Petitioner); 34-36 (Respondent)).  On August 3, 2015, Petitioner filed a reply brief and evidence.  (ECF No. 37).

In the meantime, on May 18, 2015, Petitioner filed another petition in federal court raising the same core facts and due process

---

[1] Petitioner uses and is incarcerated under the alias Bruce Phillippi II, but submitted his Petition for habeas corpus under his legal name, Robert M. Ray.  (Petition at 7).

14cv1310-DMS-MDD

claims as are raised in this Petition.  (15cv1117-CAB-MDD ECF No. 1).

On May 26, 2015, District Judge Bencivengo dismissed that petition

and directed the Clerk of Court to file a copy of that petition in this

action as an original Motion to Amend the Petition pursuant to *Woods*

*v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008).  (ECF No. 20).  The

proposed petition consolidates into one claim the grounds raised in the

operative Petition, and attaches three new documents in support of the

grounds.  (ECF No. 20).

## II.   Statement of Facts

The California Department of Corrections and Rehabilitation

("CDCR") validated Petitioner as a member of the Aryan Brotherhood

("AB") prison gang in September 2011.  (Lodgment ("Lodg.") 1).

Petitioner filed an administrative appeal of this decision, asserting that

the validation was the product of racial discrimination, retaliation by

correctional officers, false evidence, and duress.  (Lodg. 2).  The

Calipatria State Prison administrative authorities at the third level,

located in Imperial County, denied Petitioner's initial appeal on

February 1, 2012.  (*Id*.).  Petitioner filed and completed another round

of administrative appeals after being transferred to Corcoran State

Prison in Kings County.  (Lodg. 3).  He alleged the validation interview

was improperly conducted, claimed an unsound state of mind during

the proceedings due to a hunger strike combined with psychotropic

drugs, challenged the adequacy of the information regarding

Petitioner's affiliation with the AB gang, and alleged a denial of

14cv1310-DMS-MDD

procedural due process rights. (*Id*.). On May 22, 2012, the third level appeal authorities denied Petitioner's administrative appeal. (*Id*.).

### III.  **Motion to Amend Petition**

Petitioner filed a new petition opening a new action rather than filing a motion to amend attaching a proposed amended petition in this action. Consequently, District Judge Bencivengo directed the Clerk of Court to file a copy of the proposed new petition in this action as an original Motion to Amend the Petition pursuant to *Woods,* 525 F.3d at 890. (ECF No. 20).

"The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). In considering a motion to amend a petition, courts "may consider whether there is any evidence of 'undue delay, bad faith or dilatory motive' with respect to the filing of the amendment when determining whether leave should be granted." *Anthony v. Cambra*, 236 F.3d 568, 577 (9th Cir. 2000) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

There is nothing in this record to suggest undue delay, bad faith, or dilatory motive. It appears the new petition was filed to augment rather than replace the operative Petition. The second petition summarizes, instead of restating or adding to, the grounds in the operative Petition. Petitioner did not explain the similarities and differences between the two petitions. After reviewing the proposed new petition, the Court discerns no material differences in the grounds raised, but the petition attaches three new exhibits.

14cv1310-DMS-MDD

The three new exhibits include: (1) a January 21, 2015 en banc opinion by the California Supreme Court summarily denying a petition for writ of habeas corpus concerning Petitioner, (ECF No. 20 at 7); (2) a Classification Committee Chrono, dated April 22, 2015, showing that Petitioner is being retained in the Administrative Segregation Unit ("ASU") because of his AB gang validation, (ECF No. 20 at 11-13); and, (3) a denial of his petition to advance his parole hearing specifying the gang validation as the reason for denial.  (*Id.*).

Petitioner does not explain his reason for attaching these new exhibits.  The Court infers that Petitioner provides these now because they were not created until after he filed this Petition, and because they support his arguments that he has exhausted his federal claims and that the challenged gang validation caused CDCR officials to deny him the increased liberties afforded those in the general prison population and those granted parole.

Although recommending that leave to amend be granted, the Court is concerned that Petitioner may not have intended to supplant the operative Petition with the new petition.  Petitioner may not have included all the facts and allegations in the new petition, and Petitioner did not file a brief explaining the differences or his intention.  To avoid prejudice to Petitioner, the Court recommends consolidating the two pleadings as one, rather than substituting the later-filed petition for the operative Petition.  Also to avoid prejudice to Petitioner, the Court recommends considering the allegations and attachments to both petitions in ruling on the Respondent's motion to dismiss the Petition.

14cv1310-DMS-MDD

Accordingly, the Court **RECOMMENDS** that the Motion to Amend be **GRANTED**, and further **RECOMMENDS** that the second and operative petitions be treated as one consolidated Petition.

## IV.  Motion to Dismiss

### A.  Summary of Arguments

In his Petition,[2] Petitioner raises several grounds to overturn his gang affiliation validation.  (ECF No. 1; *see also* ECF No. 20). Petitioner claims a lack of an impartial hearing violated his due process rights.  (*Id*. at 5).  In addition, Petitioner alleges his due process rights were violated due to insufficient notice of evidence and the unreliability of the evidence presented by CDCR.  (*Id*. at 8).  Petitioner also claims his due process rights were violated as he was not given a hearing before the Institutional Gang Investigator.  (*Id*. at 9).  Finally, he alleges his due process rights were violated as he was medically impaired during the gang validation proceedings.  (*Id*. at 11).

Respondent moved to dismiss the Petition on four grounds, but has withdrawn one ground.[3]  (ECF No. 10).  First, Respondent argues that the entire Petition is time-barred under the one-year statute of

---

[2] In keeping with the recommendation to consolidate the operative Petition and the new petition, the Court considers the contents of both petitions in considering the motion to dismiss.

[3] Respondent originally argued that the Petition must be dismissed for lack of jurisdiction, because does not address issues of legality or duration of Petitioner's confinement.  (ECF No. 10 at 7-9).  Respondent subsequently withdrew this challenge following the issuance of the recent Ninth Circuit opinion, *Nettles v. Grounds*, --F.3d--, No. 12-16935 (9th Cir. May 28, 2015).  (ECF No. 28).

6

14cv1310-DMS-MDD

limitations provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (*Id.* at 4-7).  Second, Respondent argues that Petitioner did not allege he was deprived of his due process right to an impartial hearing in his petition filed in the California Supreme Court rendering this claim unexhausted.  (*Id.* at 9-10).  Third, Respondent contends that Petitioner's claim of insufficient and unreliable evidence to support the gang affiliation fails to allege a federal question.  (*Id.* at 10-11).

In his opposition and supplemental briefing, Petitioner disputes Respondent's arguments.  (ECF Nos. 12; 27).  With regard to the statute of limitations, Petitioner claims entitlement to equitable tolling due to a confluence of events, including prison transfers, denial of access to the law library, physical health problems, mental health problems, and instructions by the state court that he claims affirmatively misled him to file in the wrong court causing a critical delay.  (*Id.*).  Next, Petitioner alleges that his claim in state court is in fact exhausted, because he raised the claim in his petition to the California Supreme Court that he was denied his due process rights as a result of an impartial hearing. (ECF No. 12 at 9-10).  Finally, Petitioner argues that he does state a claim that raises a federal question, because he is being held in a restrictive Security Housing Unit ("SHU") and denied parole specifically because of the gang validation.  (*Id.* at 11).

In his supplemental reply brief on equitable tolling, Petitioner also argues that Respondent has conceded Petitioner was diligent, thus meeting the first prong of the equitable tolling analysis.  (ECF No. 37).

14cv1310-DMS-MDD

**B.     Additional Facts re Tolling**

**1.     State Habeas Petitions**

Petitioner exhausted his administrative remedies on May 22, 2012.  (Lodg. 3).  On August 15, 2012, Petitioner constructively filed his first petition for habeas corpus with the Kings County Superior Court,[4] which is located in California's Fifth Appellate District.  (Lodg. 4).  Finding "some evidence" in the record to support the gang validation, the Kings County Superior Court denied the petition on the merits on October 25, 2012.  (Lodg. 1).

On December 3, 2012, the date of his signature, Petitioner filed an appeal in the Fifth District Court of Appeal.  (Lodg. 5).  On January 17, 2013, the Fifth District Court of Appeal denied Petitioner's appeal without prejudice.  (Lodg. 6).  The court reasoned:

> Petitioner has failed to show why he should not be required to litigate these issues in the Fourth Appellate District where he was confined when the gang investigation occurred and he was validated a gang associate. (Cf. *In re Roberts* (2005) 36 Ca1.4th 575.)

(*Id*.).

Instead of filing an original petition in the Court of Appeal located in the Fourth District, Petitioner filed his petition for habeas corpus with the Imperial County Superior Court, a trial court located in the

---

[4] This is the date of effective filing of Petitioner's habeas corpus Petition given after his sworn statement, in compliance with 28 U.S.C. § 1746, for statute of limitations purposes under the prison mailbox rule.  Rules Governing § 2254 Cases, Rule 3(d), 28 U.S.C.A. foll. § 2254 (West 2014); (*see* Lodg. 4).

8

14cv1310-DMS-MDD

Fourth District, on the verified date of July 9, 2013.[5]  (Lodg. 7).  The Imperial County Superior Court denied Petitioner's claim as successive and recommended that Petitioner file an original petition with the Fourth District Court of Appeal, Division One.  (Lodg. 8).  Specifically, the Imperial County Superior Court stated:

> The petition was denied by the Kings County court on the merits.  Petitioner may not now relitigate his identical habeas claims in any superior court in California.  "It has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected." (*In re Clark* (1993) 5 Cal.4th 750, 767.).  Instead, petitioner must file an original petition in the Fourth Appellate District, Division One.  "Because no appeal lies from the denial of a petition for writ of habeas corpus, a prisoner whose petition has been denied by the superior court can obtain review of his claims only by the filing of a new petition in the Court of Appeal. (See *id.* at p. 767 fn. 7)

---

[5] The constructive date of filing is a matter of dispute.  The stamped filing date is July 9, 2013; however, Petitioner signed and dated his Petition for March 1, 2013.  (Lodg. 7).  Petitioner claims that he was provided incorrect guidance regarding proof of service from the Imperial County Superior Court, requiring resubmission and delaying effective date of filing.  Because Petitioner did not date his proof of service, (*see* Lodg. 7 at 42), the verified date is July 9, 2013, as used by the Imperial County Superior Court in its decision.  (Lodg. 8).  Regardless, the date of filing proves irrelevant.  As explained in the analysis below, Petitioner filed in error with the Imperial County Superior Court, rendering tolling of the limitations period unavailable, and rendering the precise date of filing immaterial.

1   (*Id*.).  The copy of the Imperial County Order that Respondent lodged

2   with the Court is dated October 29, 2013, but the copy of the Order filed

3   with the Petition is dated November 4, 2013.  (Lodgs. 8 at 3; 11 at 43;

4   ECF No. 1 (Petition) at 28).

5       On November 12, 2013, Petitioner constructively filed a habeas

6   corpus petition with the Fourth District Court of Appeal, Division One.

7   (Lodg. 9).  Based on the substantive merits of the claim, the court

8   denied the petition on December 9, 2013.  (Lodg. 10).

9       Petitioner constructively filed an appeal to the California Supreme

10  Court on January 7, 2014.  (Lodg. 11).  In his appeal, Petitioner raised

11  five arguments: 1) that the Institutional Gang Investigator did not

12  "follow their own regulations" in validating Petitioner as an AB

13  affiliate; 2) that Petitioner's due process rights were violated during his

14  interview due to his mental incapacity at the time; 3) that Petitioner

15  was subjected to cruel and unusual conditions; 4) that the validation

16  was unsubstantiated; and 5) that Petitioner's due process rights were

17  violated due to racial discrimination during the validation procedure.

18  (*Id*.)  The court summarily denied his petition on March 12, 2014.

19  (Lodg. 12).  Petitioner then filed this federal Petition on May 19, 2014.

20  (ECF No. 1).

21          **2.    Stomach Surgery and Related Health Issues**

22      On March 21, 2013, Petitioner began experiencing symptoms of

23  what turned out to be a small bowel strangulation with gangrenous

24  segments and another segment with a perforation.  (ECF No. 23 at 3, 9,

25  11 (hospital history and physical); Lodg. 16 at 23-28).  His symptoms

included severe abdominal pain, nausea, vomiting and inability to eat. (ECF No. 23 at 11; Lodgs. 15; 16 at 23-28). Two days later, on March 23, 2012, he was admitted to Mercy Hospital Bakersfield. (ECF No. 23 at 3, 11 (hospital history and physical); Lodgs. 13 at 4 (prison transfer record); 16 at 29-36).

On March 25, 2013, Petitioner underwent surgery, during which two gangrenous sections of his small bowel were removed. (ECF No. 23 at 3, 9 (Operation Report); Lodg. 16 at 29-36). After the operation, Petitioner was monitored in the intensive care unit, and suffered from acute injury to his kidneys, post-operative sepsis, post-operative ileus and pneumonia. (ECF No. 23 at 12; Lodgs. 15; 16 at 29-36).

Petitioner was discharged from Mercy Hospital Bakersfield on April 2, 2013. (ECF No. 23 at 12 (Inmate Discharge Summary); Lodg. 16 at 38). After discharge, Petitioner continued suffering from side effects, including: mild tachycardia, constipation, pain and pneumonia. (ECF No. 23 at 3, 12, 13).

Petitioner chose to forego pain medications beginning on April 5, 2013, because they caused constipation. (ECF No. 23 at 3). Progress notes dated April 5, 2013 state that Petitioner presented to the prison emergency room with nausea and severe abdominal pain starting "last night," which was relieved with laxatives. (ECF Nos. 23 at 14; 37 at 24). The physician noted "wound good." (ECF No. 37 at 24).

Patient progress notes from April 8, 2013 noted that Petitioner was complaining of abdominal pain at a level of 7 out of 10, but also noted that the surgical incision and staples were intact and clean, no

14cv1310-DMS-MDD

drainage or symptoms of infection were present, and noted no signs of distress. (ECF Nos. 23 at 13; 37 at 25). Petitioner was still wheelchair-bound as of April 8, 2013, and was under his doctor's orders to move carefully to avoid hernias. (ECF No. 37 at 6, 25).

Petitioner's staples were removed on April 10, 2013, and the treatment provider noted symptoms of infection and a one inch opening in the incision, but also noted "Pt states everything is going ok." (ECF No. 23 at 15). Steristrips were applied and Petitioner was instructed to continue abdominal binder two more weeks. (*Id.*; *see also* ECF No. 37 at 23; Lodg. 16 at 51-52).

On April 15, 2013, Petitioner was examined by his primary care physician who noted he discontinued laxatives due to diarrhea and that Petitioner had "no other complaints." (Lodg. 15 at 3 ¶ 7.c).

On April 17, 2013, Dr. Nguyen examined Petitioner and made the following notes: "He has no abdominal pain today," and "The patient has no other complaints." (Lodg. 16 at 59).

On April 23, 2013, Petitioner filed a Health Care Services Request Form complaining that his incision opened and was painful. (ECF No. 37 at 26). The triage registered nurse noted that Petitioner did not have a fever, noted "incision completely healed ø open areas @ all," and noted that there were no symptoms of infection or other problems. (*Id.*; ECF No. 23 at 16). In his supplemental brief, Petitioner clarified that what he had believed to be an open incision was instead a mini-hernia. (ECF No. 37 at 6). Petitioner was still wheelchair-bound as of April 23, 2013 as a precaution to avoid hernias and other complications. (*Id.*).

1    Petitioner was "still experiencing health difficulties" as of May 13,

2    2013, but he does not explain what difficulties or how he believes they

3    impacted his ability to work on legal matters.  (ECF No. 23 at 3).  A

4    Mercy Hospital Telemedicine Report dated May 13, 2013 notes "[t]he

5    patient is doing fine.  He has occasional pain in the abdominal scar

6    tissue," that "[t]he scar appears to be healing well," and made other

7    notes indicating Petitioner was fine.  (ECF No. 23 at 17).

8    ### 3.    Mental Health During Limitations Period

9    Petitioner declares that he was taking anti-convulsive and

10   psychotropic medications that "affect the faculties" during the

11   limitations period.  (ECF No. 23 at 4).  Petitioner also declares he was

12   held in ASUs and SHUs during the entire period, and both housing

13   assignments "can cause mental health issues." (*Id.*).  Petitioner also

14   noted he "has had a history of depression." (*Id.*).

15   Petitioner provided a neurology follow up note from a medical

16   treatment provider at Calipatria State Prison dated March 15, 2012,

17   shortly before the limitations period began.  (ECF No. 37 at 30).  The

18   provider noted Petitioner had "several neurologic issues" including

19   headaches, neck pain related to a bulging disc, neuropathy and

20   radiating pain.  Petitioner tried various medications to address the

21   headaches and pain, including Effexor, Neurontin, Paxil (20 mg),

22   Trileptal, Salsalate, Atenolol and Tylenol. (*Id.*).  The treatment

23   provider noted "[s]econdary issues complicating [headaches] include

24   stress/anxiety/depressed mood/poor sleep/family issues as he is now

25   getting a divorce along w/fighting court case." (*Id.*).  The provider also

14cv1310-DMS-MDD

noted "[i]n the last 6 weeks he has had only 2 [headaches] and they have been mild," and "[n]ow his neck hurts only when he makes excessive mvmts." (*Id.*; Lodg. 16 at 4, 71 (Paxil given to Petitioner for migraines "not psych."), 75).

Respondent provided a Comprehensive Forensic Assessment prepared by a psychologist in advance of parole consideration in 2011. Petitioner graduated high school, and test results place him at a 12.9 grade level for both reading and math. (Lodgs. 17-19). The assessment noted that Petitioner was not and never has been a recipient of the Mental Health Services Delivery System, and that he denied mental health problems including depression, anxiety and anger. (*Id.* at 4).

On March 15, 2012, June 21, 2012, May 16, 2013, September 24, 2013, and April 8, 2014, Dr. Middleton, Dr. Wilson, LCSW Urbano, M. Roberts, Ph.D., and LCSW Prince each performed separate SHU clinical assessments of Petitioner's mental health and concluded Petitioner did not meet the criteria for inclusion in the Mental Health Services Delivery System and did not have a severe mental health disorder such as Major Depressive disorder or mental retardation. (Lodg. 16 at 2, 17, 64-65, 69).

Petitioner completed a May 19, 2012 Mental Health Screen. (Lodg. 16 at 6). Petitioner responded that he had never been hospitalized for psychiatric treatment, never been involuntarily committed for psychiatric problems, never taken medication for psychiatric or emotional problems, never had a serious psychiatric or emotional problem, never received mental health services, and never

14

experienced a list of psychiatric symptoms (*e.g.*, lost appetite for two or more weeks, sleeplessness, lost sexual interest, paranoid or delusional thoughts.). (*Id.* at 6-8). The clinician noted Petitioner's mental health needs are "routine." (*Id.* at 8).

On July 20, 2012, Petitioner sought treatment for tiredness, sleeplessness, lightheadedness, dizziness and extreme perspiration. (Lodg. 16 at 18). The treatment provider attributed the symptoms to his preexisting pancreatitis and sent instructions to the kitchen to adjust his diet. (*Id.*). A July 25, 2012 medical note states that Petitioner stopped taking his neck pain medication because it caused sleep problems, and he was prescribed Naprosyn instead. (*Id.* at 19).

In his supplemental reply, Petitioner declares that he suffered more mental issues and side effects that are not reflected in the records because he did not complain, based on his belief that complaining would not have improved his symptoms or changed the medications prescribed. (ECF No. 37 at 6).

### 4.    Access to Legal Materials

Petitioner had only intermittent access to legal materials during a series of prison transfers at the beginning of the limitations period, which started May 23, 2012. On May 23, 2012, Petitioner was housed at Corcoran State Prison's ASU. (ECF No. 23 at 2; Lodg. 13 at 3). On May 30, 2012, Petitioner was transferred from Corcoran's ASU to the SHU. (*Id.*). On the same day, Petitioner turned in two boxes of personal property to be transferred to his new location separately.

14cv1310-DMS-MDD

1   (Lodg. 14 at 1).  On June 4, 2012, he received two bags of legal

2   paperwork, but the rest of his property was missing.  (*Id*. at 3).

3        The next day, June 5, 2012, Petitioner was transferred from

4   Corcoran State Prison to North Kern State Prison.  (ECF No. 23 at 2, 7;

5   Lodg. 13 at 3).  The next day, June 6, 2012, Petitioner was transferred

6   to Centinela State Prison.  (*Id*.).  On June 7, 2012, Petitioner was out to

7   court in Imperial County.  (*Id*.; Lodg. 29).  On June 8, 2012, Petitioner

8   had his legal property.  (ECF No. 23 at 2, 7; Lodg. 13 at 3).

9        On June 11, 2012, prison staff received one box of Petitioner's

10  personal items, and Petitioner was transferred to Chino State Prison's

11  Reception, where he was housed overnight in a standing cage.  (*Id*.).

12  The next day, Petitioner was transferred to Corcoran's SHU Unit 4b-1R.

13  (*Id*.).  On June 29, 2012, Petitioner received a box of personal items

14  including his legal papers and legal envelopes.  (Lodg. 14 at 5).

15       Three or four weeks later, in early July of 2012, Petitioner was

16  transferred to a different SHU in Corcoran (Unit 4b-1L).  (ECF Nos. 23

17  at 2, 7; Lodg. 13 at 3).  Petitioner declares that he received most of his

18  property two or three weeks later, though some remained missing.

19  (*Id*.).  According to Respondent, there are no property transfer

20  documents to support Petitioner's claimed deprivation of legal papers

21  after June 29, 2012.  (ECF Nos. 34; 35).  Instead, property transfer

22  records show it was other personal property (e.g., clothing and

23  electronics) that was not returned to him until July of 2012.  (*Id*.).

24       On July 15, 2013, Petitioner filed an inmate grievance

25  complaining that his legal mail was missing, including legal paperwork

to and from the court and books of stamps he ordered to facilitate court filings.  (ECF No. 23 at 23).  He requested the mail be returned to him, that the disruption cease, and that a receipt form be made "so that we can prove to the courts we gave legal mail to staff."  (*Id*.).

**5.  Access to Law Library During Limitations Period**

In addition to lacking access to the law library during the series of prison transfers, Petitioner was denied law library access on other dates during the limitations period.  Petitioner submitted several urgent requests seeking access to the law library after his petition was denied in Kings County so that he could work on his appeal to the Fifth District Court of Appeals.  (ECF No. 23 at 18; Lodg. 21).  Even though he had "Priority Library User" status ("P.L.U.") from October through November 2012, he was not granted access until December 3, 2012.  (ECF No. 23 at 20).  On February 13, 2013, approximately one month after the petition was denied by the Fifth District Court of Appeals, Petitioner submitted a CDCR 22 Inmate Request stating,

> I need to get access to the library.  I just received a court order denying my Habeas due to my appealing in the wrong county.  I have only a certain amount of time to file in the right county.  See included paperwork… Please can you [undecipherable] me P.L.U. quickly?  I will probably only need one visit to do it all.

(ECF No. 23 at 22).  Staff responded nine days later on February 22, 2013, "Fill out PLU form and return."  (*Id*.).  Petitioner responded the next day, "I have filled out the PLU request form.  Please I am running out of time."  (*Id*.).  The first time Petitioner accessed the library after these requests was a few weeks later on March 13, 2013.  (Lodg. 20).

17

14cv1310-DMS-MDD

On July 24, 2013, Petitioner submitted a CDCR 22 Inmate

Request seeking CDCR 22 request forms, books, and:

> #3= May I have access to the law library please?  Until
> then I need 4 very large manila envelopes with 4 trust
> account withdrawal slips, 50 pages of 28 numbered legal
> paper/and 50 pages of typing paper, an up to date 2013
> Title 15, so I know the new rules and regulations/A §
> 1983 form And the address to the local Federal court
> (w/Rules o/court).

(ECF No. 23 at 21).  The staff response, dated August 1, 2013, states:

"All R[undecipherable] Items [indecipherable] Enclosed – Updated Title

15 Has To Be Looked At In Law Library." (*Id*.).  Petitioner wrote a

response, though there is no prison staff signature acknowledging that

Petitioner submitted it, stating:

> No disrespect but I'm not allowed to go to law library #1
> and #2, who are you?  #3 I didn't receive a § 1983,
> address to local federal court, local court rules for it.
> Also, who do I get at to receive the new 2013 Title 15?

(*Id*.).

Between May 22, 2012, when his administrative grievance was

exhausted, and May 19, 2014, when he filed this Petition, Petitioner

was granted access to the law library on 26 occasions for several hours

each time on: July 23, 2012; August 8, 2012; December 3, 2012; March

13, 2013; October 14, 2013; October 21, 2013; October 28, 2013;

November 13, 2013; December 2, 2013; December 16, 2013; December

23, 2013; December 30, 2013; January 6, 2014; January 13, 2014;

January 27, 2014; February 2, 2014; February 24, 2014; March 3, 2014;

March 10, 2014; March 17, 2014; March 26, 2014; April 2, 2014; April 7,

18

2014; April 14, 2014; April 21, 2014; and May 17, 2014.  (Lodg. 20).  At Petitioner's request, the law library staff also made copies, provided him legal supplies, and mailed legal paperwork at times when he was not afforded law library access.  (Lodgs. 22-25).

## C.   **Standard of Review**

### 1. **Statute of Limitations**

"A statute of limitation defense may be raised by a motion to dismiss if the running of the limitation period is apparent on the face of the complaint."  *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  AEDPA governs federal habeas petitions filed after April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997).  As Petitioner filed the Petition before this Court on May 19, 2014, (ECF No. 1), AEDPA applies to this case.

### 2.  **Exhaustion**

Generally, applications for writs of habeas corpus that contain unexhausted claims are procedurally barred.  28 U.S.C. § 2254(b)(1)(A) (West 2014); *see Rose v. Lundy*, 455 U.S. 509, 522 (1982).  In addition, federal courts have the discretion to deny a habeas application on the merits notwithstanding a petitioner's failure to fully exhaust state judicial remedies.  *See* 28 U.S.C. § 2254(b)(2).

### 3. **Cognizable Claim**

Under federal law, a prisoner seeking relief on claims related to imprisonment may file a petition for habeas corpus pursuant to 28 U.S.C. § 2254.  A federal court "shall entertain an application for a writ

19

of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Federal intervention in state court proceedings is only justified when there are errors of federal law.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).  Further, federal habeas courts are bound by a state's interpretation of its own laws.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

### D.   Analysis

#### 1. Timeliness

##### a. Statute of Limitations

Under AEDPA, a state prisoner generally must file a federal petition for habeas corpus within one year of the underlying judgment becoming final.  28 U.S.C. § 2244(d)(1) (West 2014).  Under §2244(d)(1)(D), the limitation period runs from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  The statute of limitations does not begin to run in a petitioner's case until he is aware of all the facts of the claim.  *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001).

Here, as Respondent concedes, Petitioner learned of the factual predicate of his claims on May 22, 2012, the date that the CDCR Office of Appeal denied Petitioner's second administrative appeal of the gang

1  validation.  (ECF No. 10 at 5).  Accordingly, absent tolling, the statute

2  of limitations expired one year later on May 22, 2013.  Petitioner filed

3  his Petitioner 362 days late unless tolling applies.

### b. Statutory Gap Tolling

5  Petitioner contends tolling renders his claims timely.  To prevail,

6  he must show 362 days' worth of tolling.  "The time during which a

7  properly filed application for State post-conviction or other collateral

8  review with respect to the pertinent judgment or claim is pending shall

9  not be counted toward any period of limitation under this subsection."

10  28 U.S.C. § 2244(d)(2).  Accordingly, an application for post-conviction

11  relief is pending during the "intervals between a lower court decision

12  and a filing of a new petition in a higher court."  *Carey v. Saffold*, 536

13  U.S. 214, 221 (2002).

14  Additionally, "the period that an application for post-conviction

15  review is pending is not affected or 'untolled' merely because a

16  petitioner filed additional or overlapping petitions before it is complete."

17  *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003).  "Rather, each

18  time a petitioner files a new habeas petition at the same or a lower level

19  . . . the subsequent petition has no effect on the already pending

20  application, but triggers an entirely separate round of review."  *Id.*

21  Stated differently, "the AEDPA statute of limitations is tolled for 'all of

22  the time during which a state prisoner is attempting, through proper

23  use of state court procedures, to exhaust state court remedies with

24  regard to a particular post-conviction application.'"  *Nino v. Galaza*, 183

25  F.3d 1003, 1006 (9th Cir. 1999).

1    In *Carey*, the Court held that if the California Supreme Court

2    found that a prisoner had unreasonably delayed in presenting habeas

3    claims, as that term is defined under California law, the application for

4    state post-conviction relief would not be considered to have been

5    "pending" during that period of delay.  *Carey,* 536 U.S. at 221.  In *Evans*

6    *v. Chavis*, 546 U.S. 189 (2006), the Court reiterated its holding in *Carey*

7    that the time between filings in California courts does not count under

8    the "pending" language of § 2244(d)(2) if the petition is ultimately found

9    to be untimely.  A six month unexplained delay (or 180 days) is now

10   presumptively unreasonable.  *Evans*, 546 U.S. at 209; *see also Chaffer v.*

11   *Prosper*, 592 F.3d 1046 (9th Cir. 2010) (holding that gaps of 115 days

12   and 101 days without adequate explanation of the delays as required

13   under California law by *In re Swain*, 34 Cal. 2d 300, 304 (1949), did not

14   support statutory tolling and noting that the California Supreme Court

15   had declined to answer the certified question regarding what

16   constitutes a timely non-capital habeas case).

17   Respondent concedes, and the Court agrees, that Petitioner is

18   entitled to statutory tolling while his properly filed state court petition

19   was pending in Kings County and the Fifth District Court of Appeals

20   from August 15, 2012 through January 17, 2013, and while it was

21   pending in the Fourth District Court of Appeal and the California

22   Supreme Court from November 12, 2013 through March 12, 2014.

23   Combined, those date ranges total 275 days of statutory tolling.

24   The Petitioner is not entitled to statutory tolling for the periods

25   between his discovery of the factual predicate for his claims and the

date he filed his first state collateral challenge. *See Nino*, 183 F.3d at 1006 (finding that no tolling between finality of judgment and filing of application for post-conviction relief is permitted). As a result, the 85 days between the May 22, 2012 administrative denial and his initial filing for post-conviction relief with the State at the Kings County Superior Court on August 15, 2012 are not statutorily tolled. Nor is Petitioner entitled to tolling during the 68 day delay between the California Supreme Court's denial of Petitioner's claim on March 12, 2014 and his filing of this federal Petition on May 19, 2014. *See* 28 U.S.C. § 2244(d)(2) (statutory tolling only during pendency of state post-conviction or collateral review).

Next, Petitioner's claims do not toll during the dates between the Fifth District Court of Appeal's denial of his petition on January 17, 2013 and Petitioner's filing with the Fourth District Court of Appeal on November 12, 2013. This period does not warrant statutory gap tolling for two reasons.

First, post-conviction petitions rejected by the state court as improperly filed do not toll the statute of limitations. 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). The Imperial County Court held that the petition filed in that court was improperly filed and summarizes well-established state law explaining why the filing was not proper. (Lodg. 11-10). Because the petition filed in Imperial County was not properly pending, statutory tolling does not apply to the 112 day period.

14cv1310-DMS-MDD

Second, Petitioner's first round of review is not affected by his filing of overlapping petitions during the pendency of that round.  *See Delhomme*, 340 F.3d at 820 (finding that "each time a petitioner files a new habeas petition at the same or a lower level . . . the subsequent petition has no effect on the already pending application, but triggers an entirely separate round of review").   Whether Petitioner's overlapping claim with the Imperial County Superior Court was considered on the merits or on procedural grounds is irrelevant, as the overlapping or additional petitions have "'no effect on the already pending application.'"  *Stancle v. Clay*, 692 F.3d 948, 956 (9th Cir. 2012) (quoting *Delhomme*, 340 F.3d at 820 (finding that the first round of review remains unaffected by overlapping petitions)).  "Thus, the first round of review remains pending, and tolling does not end until that round is completed at the California Supreme Court, as long as the petitioner does not delay unreasonably, even if the petitioner begins a new round while that round is still pending." *Delhomme,* 340 F.3d at 820.

Instead, this 299 day gap between proper filings in the same round of review is untolled due to Petitioner's unreasonable delay.  In *Stancle*, the Ninth Circuit found that an 82 day delay between filings was unreasonable.  692 F.3d at 956.  This 299 day gap also far exceeds the presumptive six month delay standard set by the U.S. Supreme Court.  *See Evans*, 546 U.S. at 209.  Accordingly, the 299 days between the denial in the Fifth Appellate District and the filing in the Fourth

24

14cv1310-DMS-MDD

District Court of Appeals are not statutorily tolled.  *See Velasquez v. Kirkland*, 639 F.3d 964, 968 (9th Cir. 2011).

In sum, Petitioner is not entitled to statutory tolling of the days his Imperial County petition was pending or for the period between the Fifth District Court of Appeals' denial and the Fourth District Court of Appeals' filing, but Petitioner is entitled to 275 days of statutory tolling for the time his petitions were pending in the other state courts.  Even with the 275 days of statutory tolling, 87 days remain untolled.

## c. Equitable Tolling

Petitioner's claims may be timely if equitable tolling applies to at least 87 days in the otherwise untolled periods: May 23, 2012 through August 15, 2012; January 17, 2013 through November 12, 2013; and May 12, 2014 through May 19, 2014.  Petitioner contends that a confluence of the following allegedly extraordinary circumstances precluded him from filing timely:

1. Petitioner's status as an indigent pro se prisoner;

2. Petitioner's confinement in ASU and SHU housing, "known for being limited in its access to legal library and/or legal materials;"

3. Petitioner was transferred multiple times, limiting his access to legal materials and the law library;

4. Petitioner suffered incapacitating abdominal surgery and post-operative health complications;

25

5. Petitioner suffers from CDCR-documented mental health issues and takes multiple painkillers and psychotropic medications that have mental side effects; and,

6. Petitioner "was affirmatively misled by a court in regards to the proper venue for his petition...."

(ECF No. 37 at 4-5).

Respondent contends that Petitioner fails to show extraordinary circumstances prevented him from filing a timely petition, that his argument is contradicted by the fact he filed twenty-five legal documents in at least sixteen different cases between May 23, 2012 and May 19, 2014. Respondent emphasizes that even if Petitioner was sporadically incapacitated by any of these occurrences, they were not the cause of his failure to timely file. Respondent argues that Petitioner still had sufficient time to timely file his Petition, and the true cause for the untimeliness is that he misread the Fifth District Court of Appeals' order that informed him he should file in the Fourth District Court of Appeals and mistakenly filed in Imperial County Superior Court instead. Respondent contends that ignorance of the law, mistake or confusion, and pro per status are not extraordinary circumstances entitling Petitioner to equitable tolling.

Petitioner replies that the confluence of events was extraordinary, that Respondent has conceded he was diligent, and that the Fifth District Court of Appeals inadvertently but affirmatively misled him, causing a critical delay.

26

14cv1310-DMS-MDD

1    AEDPA's statute of limitations is subject to equitable tolling.

2  *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th

3  Cir. 1997), *overruled on other grounds*, *Calderon v. United States Dist.*

4  *Court*, 163 F.3d 530, 540 (9th Cir. 1998).  A petitioner "is 'entitled to

5  equitable tolling' only if he shows '(1) that he has been pursuing his

6  rights diligently, and (2) that some extraordinary circumstance stood in

7  his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631,

8  632 (2010) (quoting *Pace*, 544 U.S. at 418).  "When external forces,

9  rather than a petitioner's lack of diligence, account for the failure to file

10  a timely claim, equitable tolling of the statute of limitations may be

11  appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).  The

12  extraordinary circumstances must cause the untimeliness. *Spitsyn v.*

13  *Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

14    The burden is on Petitioner to show that the "extraordinary

15  circumstances" he has identified were the cause of his untimeliness,

16  rather than merely a lack of diligence on his part.  *Id.*; *Stillman v.*

17  *LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).  Even if a petitioner

18  fails to meet this burden, the petitioner should "receive an evidentiary

19  hearing when he 'makes a good faith allegation that would, if true,

20  entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969

21  (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir.

22  2003)).  Nevertheless, a district court presented with an insufficient

23  record need not hold an evidentiary hearing if the record can be amply

24  developed by other means, such as requesting supplemental briefing.

25  *Orthel v. Yates*, No. 12-17165, --F.3d--, 8-10 (9th Cir. July 28, 2015).

The Ninth Circuit in *Beeler* noted that "equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996)). Ultimately, district judges must "take seriously Congress's desire to accelerate the federal habeas process" and "only authorize extensions when this high hurdle is surmounted." *Roy*, 465 F.3d at 1289.

### i. Status as Indigent ASU Inmate; Confusion; and Lack of Legal Knowledge

Petitioner's status as an inmate proceeding on his habeas claim pro se and in forma pauperis is not an extraordinary circumstance. *Chaffer*, 592 F.3d at 1049; *see also*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Further, Petitioner's condition of being housed in ASU and SHU, though it does result in increased limitations on access to legal materials and the law library, is not an extraordinary circumstance entitling him to equitable tolling. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (equitable tolling not warranted where petitioner housed in ASU despite increased limitations on access to law library and legal materials).

Accordingly, the Court **RECOMMENDS** finding that Petitioner is not entitled to equitable tolling due to limitations flowing from his status as an inmate proceeding pro se or his ASU and SHU housing assignments.

### ii.  **Prison Transfers**

Petitioner argues he was prevented from filing his Kings County Superior Court petition earlier because he was denied access to legal papers during multiple prison transfers from mid-May 2012 through mid-July 2012.  Denial of access to legal materials can be considered an 'extraordinary circumstance.'  *See, e.g.*, *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-1028 (9th Cir. 2005) (complete deprivation of legal materials for 11 months); *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002) (82 day denial of access to legal materials during time when it was unclear when California Supreme Court habeas petition was final and tolling ended may warrant equitable tolling).  Respondent concedes that Petitioner was transferred several times during mid-May 2012 through mid-July 2012, and that he did not have access to his legal papers during some, but not all, of that time.

The record shows that Petitioner was without his legal papers for 35 days, but Petitioner fails to establish that this denial was the cause for his untimely filing.  To constitute extraordinary circumstances, the deprivation of access to legal papers must be complete and must be the cause for the delay in filing the federal habeas petition.  *Ford v. Pliler*, 590 F.3d 782, 790 (9th Cir. 2009) (inability to access files was not the cause of untimeliness because the legal materials were unnecessary to file timely federal habeas petition); *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013-1014 (9th Cir. 2009) (denial of access to legal materials was not the cause of untimeliness, because petitioner could have filed basic petition and amended later).  Short deprivations of legal papers at

29

the beginning or the middle of the limitations period do not equitably toll the statute of limitations. *Allen v. Lewis*, 255 F.3d 798, 801 (9th Cir. 2001) (27 day deprivation of legal materials at the beginning of the limitations period insufficient for equitable tolling).

Here, the prison transfers depriving Petitioner of access to his legal papers were at the beginning of the limitations period. (ECF No. 23 at 2; Lodgs. 13; 14). Moreover, Petitioner was not completely denied access to legal papers during this two month period; he had intermittent access. (*Id.*). Prison records show he was without legal papers for 16 days from May 23, 2012, the day the limitations period began, up to but not including June 8, 2012. (Lodg. 14 at 2). Petitioner filed a Second Amended Complaint in a 42 U.S.C. § 1983 action pending in the Eastern District of California on June 10, 2012, showing he was not prevented from working on legal matters at that time. (Lodgs. 14 at 6; 26; 47; 48). Prison records show he was without legal papers for another 19 days from June 11, 2012 through June 29, 2012. (Lodgs. 13 at 6; 14 at 5-7). In sum, Petitioner lacked access to his legal papers for 35 days and that he filed a pleading in a case pending in the Eastern District of California in between those two brief periods of deprivation.

Petitioner's lack of access to his legal papers at the beginning of the limitations period is not an extraordinary circumstance and did not cause the untimely federal filing. Accordingly, the Court **RECOMMENDS** finding that the transfers resulting in two short denials of access to legal materials at the outset of the limitations period do not equitably toll the limitations period.

14cv1310-DMS-MDD

1    If the District Judge declines to follow this recommendation and

2  finds equitable tolling appropriate during the transfers, then Petitioner

3  would be entitled to another 35 days of tolling.  When combined with

4  the 275 days of statutory tolling, 310 days would be tolled, and 54 days

5  remain untolled.

6    ### iii.  Access to Law Library

7    Although Petitioner has shown that he was denied access to the

8  law library on some occasions, the records show he had regular access to

9  the law library throughout the limitations period.  Complete denial of

10  library access warrants equitable tolling, but limited access to a law

11  library and a copy machine are routine restrictions of prison life, and do

12  not warrant equitable tolling.  *Ramirez,* 571 F.3d at 998.  The law

13  library logs in the record show Petitioner actually accessed the law

14  library 26 times from July 23, 2012 to May 17, 2014.  (Lodg. 20).  At

15  Petitioner's request through the prison "paging" system, the law library

16  staff also made copies, provided him legal supplies, and mailed legal

17  paperwork at times when he was not afforded law library access.

18  (Lodgs. 22-25).  Petitioner was not completely denied access during any

19  long duration of time, nor was he denied access at the end of the

20  limitations period.

21    Accordingly, the Court **RECOMMENDS** finding that Petitioner's

22  limited library access does not entitle him to equitable tolling.

23    ### iv.  Physical Health

24    Petitioner seeks equitable tolling for his March 24, 2013 stomach

25  surgery, and related health difficulties.  A severe physical illness

14cv1310-DMS-MDD

requiring hospitalization can equitably toll the statute of limitations. *See e.g.*, *Leon v. Hedgpeth*, 467 F. App'x 665, 666 (9th Cir. 2012) (statute equitably tolled where petitioner suffered severe illness requiring two hospitalizations and morphine shortly before limitations period was set to expire).  Petitioner has shown physical incapacity sufficient to warrant tolling of the statute of limitations from March 21, 2013 through April 10, 2013, a period of 21 days.  (ECF Nos. 23; 37; Lodgs. 15; 16).  Although Petitioner continued to have health difficulties after April 10, 2013, his physical condition was no longer severe enough to prevent him from working on his legal matters.  (*Id.*).

Accordingly, this Court **RECOMMENDS** finding that Petitioner's statute of limitations was tolled for 21 days from March 21, 2013 through April 10, 2013 due to his physical health problems.  When this tolling is combined with the 275 days statutory tolling, then 296 days are tolled, and 66 days remain untolled.

In the event that the District Court declines this Court's recommendation in the preceding section to deny equitable tolling related to the prison transfers, then all three categories of tolling amount to 331 days of tolling, leaving 31 days untolled.

### v.  Mental Health

Petitioner claims equitable tolling for mental impairment.  A habeas petitioner's deadline should be equitably tolled where a mental impairment is "so debilitating that it is the but-for cause of the delay." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014); *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010); *Laws*, 351 F.3d at 923.

1    Here, Petitioner has not shown that he had a mental impairment

2    severe enough to constitute an extraordinary circumstance during the

3    relevant time period.  Petitioner's intelligence was assessed at levels far

4    above the levels that would implicate mental impairment.  Petitioner

5    received regular mental health assessments before and during the

6    period.  He denied having any signs of major mental impairment, and

7    the medical professionals assessing him found that he did not need

8    mental health services.  His mental health needs are "routine."

9        To the extent he experienced sleeplessness, anxiety and

10   headaches, neither he nor his medical services provider attributed those

11   to a serious mental health impairment.  Further, those symptoms were

12   treated by adjustments to his medications, and the medical provider

13   noted that the symptoms were greatly reduced.  In addition, the

14   medications he was on—including Paxil—were not for mental

15   impairment, but for control of migraines and other well-controlled

16   physical problems.  Examination notes confirm that he had no

17   significant complaints about medication side effects that implicate a

18   debilitating mental impairment.  While Petitioner may have been

19   depressed, he did not suffer from clinical depression, and as he noted in

20   his papers, depressed feelings are common in prison.

21       Further, Respondent provided evidence of twenty-five documents

22   that Petitioner filed in at least fifteen different habeas, civil rights,

23   dissolution, and criminal cases during the period he now claims mental

24   impairment.  (ECF No. 34 at 15-18 (detailed chart of all filings in brief

25   with citation to lodgments); Lodgs. 4; 5; 7; 9; 11; 27; 30-49; 51; 52).

14cv1310-DMS-MDD

1   These filings contradict Petitioner's assertion that his mental health
2   prevented him from working on his legal matters.
3       Accordingly, the Court **RECOMMENDS** finding no equitable
4   tolling is warranted as a result of Petitioner's mental health during the
5   limitations period.

### vi.  Filing Detour

7       Finally, Petitioner contends that his detour to the Imperial
8   County Court from July 9, 2013 through November 4, 2013 should be
9   equitably tolled because the Kings County Court inadvertently but
10  affirmatively misled him that he must next file his petition in a
11  superior court in the Fourth District.  He further argues that the
12  California Judicial Council form for Petition for Habeas Corpus
13  contains an advisement that he relied on to his detriment, which
14  ultimately resulted in his filing detour.  Respondent contends that the
15  detour was the result of Petitioner's own mistake or ignorance, and not
16  subject to equitable tolling.  Both agree that the filing detour caused his
17  federal filing to be untimely.

18      The Ninth Circuit allows equitable tolling to habeas petitioners
19  who have been "affirmatively misled" by a federal or state court's
20  erroneous instructions.  *U.S. v. Buckles*, 647 F.3d 883, 891 (9th Cir.
21  2011) (remanding to develop factual record on petitioner's assertion
22  that the Ninth Circuit Clerk provided his sister with misinformation
23  that led to untimely filing); *Sossa v. Diaz*, 729 F.3d 1225, 1233-1235
24  (9th Cir. 2013) (magistrate judge's order granting extension of time to
25  file amended federal petition affirmatively misled petitioner, entitling

34

1  him to equitable tolling); *see also Pliler v. Ford*, 542 U.S. 225, 235 (2004)

2  (O'Connor, J., concurring) ("Nevertheless, if the petitioner is

3  affirmatively misled, either by the court or by the State, equitable

4  tolling might well be appropriate.").

5      Equitable tolling, however, does not apply where the petitioner

6  draws and relies upon an incorrect inference from court instructions

7  that were not misleading.  *Brambles v. Duncan*, 412 F.3d 1066, 1070

8  (9th Cir. 2005) (petitioner was not entitled to equitable tolling, because

9  district court's instruction that petitioner must choose between two

10  alternatives was not misleading, even though one of the alternatives

11  was time-barred).  "[W]here a litigant's own mistake clearly contributed

12  to his predicament," or where the failure is the result of "oversight,

13  miscalculation or negligence" on the petitioner's part, equitable tolling

14  is not available.  *Cf. Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir.

15  2008) (stating rule, but finding equitable tolling applied because

16  petitioner's failure to file timely resulted from a change in the law on

17  timeliness rather than his conduct).

18      When Petitioner initially filed the petition in Kings County Court

19  in the Fifth Appellate District, he did so because the California Judicial

20  Council form for Petition for Habeas Corpus "gives very clear and

21  simple instructions in big/bold letters, 'if you are challenging the

22  conditions of your confinement and are filing this in the Superior Court,

23  you should file it in the county in which you are confined.'"  (ECF No. 37

24  at 12 (brief), 16 (Judicial Council Form MC-275)).  Petitioner followed

25  those instructions, and filed his initial petition in Kings County, where

1  he was confined at the time of filing.  Though the Kings County Court

2  accepted his petition and denied it on the merits, the appellate court in

3  the Fifth District denied the petition on the grounds that it should have

4  been filed "in the Fourth Appellate District where he was confined when

5  the gang investigation occurred and he was validated a gang associate."

6  (ECF No. 37 at 15).

7       Petitioner relied on the judicial council form's advisement to file in

8  the county in which he was confined to his detriment.  The Court finds

9  that the state court affirmatively misled Petitioner in directing him to

10 file in his place of confinement rather than where the gang validation

11 occurred.  Nevertheless, the Court has already found statutory tolling

12 applies to this period of time when his petition was pending in the Fifth

13 Appellate District, because the Kings County petition exhausted his

14 petition at the superior court level.  Petitioner is not entitled to further

15 tolling as a result of the Judicial Council form's misleading advisement.

16 In the event the District Court finds Petitioner is not entitled to

17 statutory tolling while the petition was pending in Kings County and

18 the Court of Appeals in the Fifth District, this Court **RECOMMENDS**

19 finding that Petitioner is entitled to equitable tolling for that time

20 period.

21       Turning now to the improper Imperial County filing, the Court

22 finds Petitioner was not affirmatively misled by the Fifth District

23 appellate court's Order rejecting venue on the grounds that Petitioner

24 should re-file "in the Fourth Appellate District."  The Court agrees with

25 Petitioner that the appellate court's Order did not expressly instruct

14cv1310-DMS-MDD

him to file in the appellate court in the Fourth District, as Respondent contends.  The appellate court Order referred broadly to the "District" without specifying whether the next filing should be at the trial or appellate level.  Because the court did not specify, Petitioner remained responsible for selecting the proper court.  *See e.g.*, *Brambles*, 412 F.3d at 1070 (equitable tolling denied because court's instructions that petitioner had two options available was not misleading, even though court did not inform petitioner that one  of the options was time-barred).  Petitioner relied on his own mistaken interpretation rather than an express instruction from the state court.  As the Imperial County Superior Court later emphasized, there is well-established case law that a prisoner whose petition has been denied by a superior court can only obtain review by filing in an appellate court.  (Lodg. 8 at 3 (Order quoting *In re Clark*, 5 Cal. 4th 750, 767 (1993)).  Petitioner should have followed this case law to select the appellate court in the Fourth District rather than the trial court.

The Imperial County filing detour is the result of Petitioner's misinterpretation of the Fifth District Court of Appeal's Order and ignorance of the law.  Petitioner's confusion, ignorance of the law and mistake are not extraordinary circumstances.  Consequently, the Court **RECOMMENDS** finding that Petitioner is not entitled to equitable tolling for his 112 day detour to Imperial County Superior Court.

### d. Conclusion re Timeliness

Having considered the totality of all of the circumstances, the Court **RECOMMENDS** finding that 266 days were equitably tolled,

14cv1310-DMS-MDD

1  that 66 days remain untolled, and further **RECOMMENDS** finding

2  that there is insufficient tolling of the limitations period to relieve the

3  Petition of its untimeliness.  Consequently, the Court **RECOMMENDS**

4  that Respondent's motion to dismiss be **GRANTED**, and that the

5  Petition be **DISMISSED**.

6       In the event the district court declines to adopt this

7  recommendation and finds the Petition timely, the Court now turns to

8  the other issues raised in Respondent's motion to dismiss.

9       **2. <u>Exhaustion</u>**

10       To exhaust state judicial remedies, a California state prisoner

11  must present the California Supreme Court with a fair opportunity to

12  rule on the merits of every issue raised in his or her federal habeas

13  petition.  28 U.S.C. § 2254(b),(c); *Granberry v. Greer*, 481 U.S. 129, 133-

14  34 (1987).  The petitioner must have raised the same federal claims

15  brought in the federal petition before the state supreme court.  *See*

16  *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

17       The Ninth Circuit has held that a federal claim "is fairly

18  presented if the petitioner has described the operative facts and legal

19  theory upon which his claim is based."  *See Tamapua v. Shimoda*, 796

20  F.2d 261, 262 (9th Cir. 1986) (holding that to state a federal due process

21  claim it is not necessary to invoke 'the talismanic phrase "due process of

22  law" ' or cite 'book and verse on the federal constitution;' petitioner need

23  only make 'essentially the same arguments' before the state and federal

24  courts to exhaust a claim).  Further, courts have a duty to construe pro

25

1    se filings of prisoners liberally.  *Zichko v. Idaho*, 247 F.3d 1015, 1020

2    (9th Cir. 2001).

3        Respondent asserts that Petitioner's claim that his federal due

4    process rights were violated because his gang validation hearing was

5    impartial have not been exhausted in state court.  (ECF No. 10).  The

6    Court disagrees.

7        The Petition alleges that Petitioner's federal due process rights

8    were violated when he was not provided an impartial hearing, because

9    the CDCR officers that investigated Petitioner's AB affiliation were the

10   same that conducted the hearing.  (ECF No. 1 at 6).   In the state

11   petition, Petitioner argued that the Institutional Gang Investigator did

12   not provide Petitioner with an opportunity to be heard "in a meaningful

13   way" with respect to the "source items used in the validation interview"

14   because the "same authors" of his validation packet held the review.[6]

15   (Lodg. 11).

16       In both petitions, Petitioner uses the same operative facts (that

17   the same CDCR officer who conducted the investigation into Petitioner's

18   gang affiliation also conducted the interview), and the same legal theory

19   (that his federal due process rights were violated).  Petitioner has

20   presented the California Supreme Court with a fair opportunity to rule

21   _____

22   [6] California Code of Regulations, title 15, § 3378(c)(6)(A), which governs

23   the gang validation process, sets forth a process including an
     investigation, an interview with the prisoner, at which the prisoner is

24   given an opportunity to be heard regarding the evidence, and a review
     of the interview and evidence.  Petitioner's state supreme court petition

25   uses the terms interview, review, and hearing interchangeably.

14cv1310-DMS-MDD

1   on the merits of the issues raised in his federal habeas Petition.  His

2   claims are therefore exhausted and not subject to dismissal under 28

3   U.S.C. § 2254(b)(1)(A).  The Court **RECOMMENDS** denying

4   Respondent's motion to dismiss on this ground.

5                 **3.** **Cognizable Claim**

6        Respondent argues that the Court should dismiss Petitioner's

7   allegation in his second Ground that "CDCR relied on improper

8   evidence under California regulatory law for failure to allege a federal

9   question." (ECF No. 10).  In his second Ground, Petitioner's overall

10  argument is that due to insufficient notice and unreliability of the

11  evidence used by the CDCR, his constitutional due process rights were

12  violated.  (ECF No. 1).

13       Only claims which allege a violation of the federal Constitution,

14  laws or treaties are cognizable on federal review.  *See* 28 U.S.C. §

15  2254(a); *Estelle,* 502 U.S. at 67-68.  Relief is not available for an alleged

16  error in the interpretation or application of state law, unless it involves

17  "fundamental unfairness." *Estelle*, 502 U.S. at 68.  If it is proven that

18  Petitioner was given insufficient notice of the evidence to be used

19  against him or that the CDCR changed the evidence used in its

20  determination of Petitioner's gang affiliation after his interview, this

21  state error could have rendered the gang validation process arbitrary or

22  fundamentally unfair.  Petitioner sufficiently pled a cognizable federal

23  due process violation.  Consequently, the court **RECOMMENDS**

24  denying Respondent's motion to dismiss on this ground.

25

1   **VI.**   <u>**Conclusion**</u>

2        For the reasons set forth herein, this Court **RECOMMENDS** that

3   the Court issue an Order (1) approving and adopting this Report and

4   Recommendation, (2) **GRANTING** Petitioner's motion to amend and

5   consolidating the operative and amended petitions into a single

6   consolidated petition, and (3) **GRANTING** Respondent's motion to

7   dismiss.

8        This Report and Recommendation will be submitted to the United

9   States District Judge assigned to this case, pursuant to the provisions of

10  28 U.S.C. § 636(b)(1).  Any party may file written objections with the

11  Court and serve a copy on all parties by <u>**September 4, 2015**</u>.  The

12  document shall be captioned "Objections to Report and

13  Recommendation."  Any reply to the objections shall be served and filed

14  by <u>**September 11, 2015**</u>.

15       The parties are advised that failure to file objections within the

16  specified time may waive the right to raise those objections on appeal of

17  the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

18

19       **IT IS SO ORDERED.**

20

21  Dated:   August 20, 2015

22

23                                  Hon. Mitchell D. Dembin

    United States Magistrate Judge

24

25

14cv1310-DMS-MDD