UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE PHILLIPPI,<br><br>                              Petitioner,<br><br>v.<br><br>CLARK E. DUCART,<br><br>                              Respondent. | Case No.:  14cv1310-DMS-MDD<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.     INTRODUCTION**

Petitioner Bruce Phillippi, a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenges the constitutionality of his gang classification hearing. (Pet., ECF No. 1.)  The Court has read and considered the Petition [ECF Nos. 1, 20][1], the Answer and Memorandum of Points and Authorities in

---

[1] On May 27, 2014, Phillippi filed the instant petition challenging his gang classification hearing.  On May 18, 2015, Phillippi filed a second petition challenging his gang classification hearing, which was given a new case number, 15cv1117 CAB (MDD).  The District Judge assigned to that case ordered the Petition in 15cv1117 be filed as a motion to amend the petition in the present case pursuant to *Woods v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008).  On August 20, 2015, this Court recommended the motion to amend be granted and that the two petitions be consolidated [ECF No. 38].  That recommendation was adopted by the District Judge assigned to this case on September 21, 2015 [ECF No. 43].  Thus, the Court will cite to the petitions as "the Petition" or "Pet." and will reference the ECF Number associated with each.

Support of the Answer [ECF No. 46]; Petitioner's Traverse [ECF No. 48], the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court recommends the Petition be **DENIED**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Phillippi is serving a sentence of 17 years-to-life for second degree murder and robbery. (Pet. at 1 [ECF No. 1].) He is currently incarcerated at Pelican Bay State Prison, but was incarcerated at Calipatria State Prison in 2011. (Lodgment No. 56 at 15.) On June 30, 2011, gang investigators at Calipatria State Prison provided Phillippi with four "Confidential Information Disclosure Forms" (CIDF) alleging he held a position of leadership in the Aryan Brotherhood prison gang while at Calipatria. (*Id.* at 17.) Phillippi was interviewed on July 5, 2011 regarding the allegations, and provided a written rebuttal to the confidential information. (*Id.* at 53.) Phillippi was subsequently officially validated as an Aryan Brotherhood gang member. (*Id.*)

Phillippi appealed that decision using the prison's administrative appeals process. (*Id.* at 55-66.) His appeals were denied. (*Id.*) Phillippi then filed a habeas corpus action challenging his gang validation in Kings County Superior Court, which denied the petition in a written opinion. (Lodgment No. 4.) He then filed a habeas corpus petition in the California Court of Appeal for the Fifth Appellate District, which denied the petition for lack of proper venue. (Lodgment Nos. 5-6.) Phillippi was directed to file a petition for writ of habeas corpus in the California Court of Appeal for the Fourth Appellate District because he was confined in Imperial County. (Lodgment No. 6.)

Phillippi next filed a petition for writ of habeas corpus in the Imperial County Superior Court. (Lodgment No. 7.) The superior court denied the petition and told Phillippi to file a habeas corpus petition in the California Court of Appeal for the Fourth Appellate District. (Lodgment No. 8.)

Phillippi then filed a habeas corpus petition in the California Court of Appeal for the Fourth Appellate District, which that court denied in a written opinion. (Lodgment No. 10.) Phillippi filed a habeas corpus petition in the California Supreme Court in

which he raised the due process challenges to his gang validation hearing which he alleges in his federal petition.  (*See* Lodgment No. 11; Pet. at 6-7 [ECF No. 1.].)  The California Supreme Court summarily denied the petition.  (Lodgment No. 12.)

Phillippi next filed a habeas corpus petition in this Court.  (ECF No. 1.)  While this case was pending, Phillippi filed a petition for writ of habeas corpus in the Riverside Superior Court, which denied the petition.  (Lodgment Nos. 57-58.)

Phillippi then filed a petition for writ of habeas corpus in the California Court of Appeal for the Fourth Appellate District.  In this petition, he raised a new claim, that the stigma of being validated as a gang member without sufficient due process violated his federal constitutional rights.  (Lodgment No. 59.)  That court summarily denied the petition.  (Lodgment No. 60.)  Phillippi then raised the "stigma" claim in a petition for writ of habeas corpus he filed in the California Supreme Court, which denied the petition, citing *In re Robbins*, 18 Cal. 4th 770, 780 (1998) and *In re Clark*, 5 Cal. 4th 750, 767-769 (1993).  (Lodgment Nos. 61-62.)

After raising the "stigma" claim in the California Supreme Court and while this case was pending, Phillippi filed a second habeas corpus petition in this Court in which he raised the "stigma" claim.  That petition was given a new case number, 15cv1117 CAB (MDD).  United States District Judge Cathy Ann Bencivengo ordered the Petition in 15cv1117 be filed as a motion to amend the petition in the present case pursuant to *Woods v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008).  On August 20, 2015, this Court recommended the motion to amend be granted and that the two petitions be consolidated [ECF No. 38].  That recommendation was adopted by the United States District Judge Dana M. Sabraw n September 21, 2015.

Respondent filed a motion to dismiss the Petition on October 10, 2014 [ECF No. 10].  The Magistrate Judge assigned to this case, Magistrate Judge Mitchell D. Dembin, recommended the motion to amend the Petition be granted and also recommended the motion to dismiss be granted on the ground the Petition was time barred [ECF No. 39]. The District Judge adopted in part and rejected in part the Report and Recommendation,

granting the motion to amend and denying the motion to dismiss [ECF No. 43]. Respondent was directed to file an Answer to the Petition, and Respondent did so on October 23, 2015 [ECF NO. 46]. Phillippi filed a Traverse on November 23, 2015 [ECF No. 48].

## III.  DISCUSSION

Phillippi contends his due process rights to a fair gang validation hearing were violated in several ways. In claim one, he contends his gang validation hearing was not impartial because the officers who investigated, collected and submitted the evidence supporting his gang validation were the same officers who presided over his hearing. (Pet. at 5 [ECF No. 1].) He claims he is ineligible for parole due to his gang validation. (*Id.*) In claim two, Phillippi argues his due process rights were violated because he was not given sufficient notice of the evidence presented at the hearing, the evidence was unreliable, and he was not allowed to present witnesses or rebuttal evidence; he also contends "the evidence was changed after the hearing." (*Id*. at 7 [ECF No. 1].) In claim three, Phillippi states that he did not get a hearing with "the decider," the Institution Gang Investigator (IGI). (*Id*. at 8 [ECF No. 1].) In claim four, Phillippi contends he was medically impaired when interviewed. (*Id*. at 10 [ECF No. 1.].) Finally, in claim five, Phillippi contends that "the stigma of being validated as an [Aryan Brotherhood] associate has created a governmentally imposed burden that significantly alters his legal status as a matter of state law . . . without the proper level of Due Process mandated by the federal constitution." (Pet. at 6 [ECF No. 20].) He claims that as a result of his gang validation, he has suffered various restrictions, limitations and stigmas in prison, and is no longer considered eligible to earn good time credits or to be considered for parole. (*Id.*)

Respondent first repeats the contention, made in the motion to dismiss, that the petition is untimely. (Answer at 14, 16-18.) As to Phillippi's due process claims, Respondent contends there is no clearly established Supreme Court law that establishes Phillippi is entitled to specific due process protections for a prison gang validation

decision, nor is there any clearly established Supreme Court law which establishes the evidentiary standard for such decisions. (*Id.* at 20-21.) Respondent also argues the state courts' decisions were not based on an unreasonable determination of the facts. (*Id.* at 21-25.) As to Phillippi's "stigma" claim (claim five), Respondent argues the claim is procedurally defaulted.

### A. Timeliness

Respondent filed a motion to dismiss in this case on October 10, 2014. (ECF No. 10.) A Report and Recommendation (R&R) recommending granting the motion to amend the petition and granting the motion to dismiss was filed on August 20, 2015. (ECF No. 38.) As noted above, an Order adopting in part and rejecting in part the R&R was issued on September 21, 2015, granting the motion to amend but denyimg the motion to dismiss and directing Respondent to file an Answer. (ECF No. 43.)

In the Answer, Respondent reasserts the arguments made in the motion to dismiss as to the timeliness of the Petition. (*See* Answer at 14, 16-18.) Respondent also objects to some of the findings made by the District Judge in his Order adopting in part and rejecting in part the R&R. (*Id.*) Because the District Judge has already determined the petition is timely, and because Respondent disputes findings made by the District Judge in his Order, the Court declines to address the timeliness issue in this R&R. Respondent may raise the timeliness arguments in the Objections to this R&R.

### B. Merits

1. *Standard of Review*

The Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at

8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

2. *The State Appellate Court Decision – Due Process Challenges (Claims 1-4, ECF No. 1)*

Phillippi raised his due process challenges to his gang validation hearing in a habeas corpus petition filed in the California Supreme Court. (Lodgment No. 11.) The state supreme court denied the petition without citation of authority. (Lodgment No. 12.) Accordingly, this Court must "look through" to the state appellate court's opinion denying the petition as the basis for its analysis. *Ylst*, 501 U.S. at 805-06. That court wrote:

> Initially, Phillippi contends that he was not feeling well at the time he was interviewed and that the interview should have been continued. Even accepting Phillippi's contentions are true, however, he does not establish that he was mentally incapacitated or otherwise unable to participate in the interview. His conclusory claim does not establish a basis for relief.
>
> Phillippi's contention that he was not provided proper notice is also not supported by the record. An inmate must be provided with all non-confidential source items and, for confidential source items, a Confidential Information Disclosure Form, at least 24 hours before being interviewed by the Institution Gang Investigator. (Cal. Code Regs., tit. 15, § 3378, subd. (c)(6)(B); all regulatory references are to the California Code of Regulations.) Phillippi was provided with sufficient notice several days before his interview.
>
> The Department is required to document information regarding each inmate "which is or may be critical to the safety of persons inside or outside an institution . . . ." (§ 3378, subd. (a); [sic]) "Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee." (§ 3378, subd. (c).) "An associate is an inmate . . . who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of

>documentation indicative of association with validated gang members or associates.  Validation of an inmate . . . as an associate of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang." (§ 3378, subd. (c)(4).) The Department's decision regarding prisoner classification is upheld if it is supported by "some evidence." (*In re Player* (2007) 146 Cal.App.4th 813, 824, citing *Superintendent v. Hill* (1985) 472 U.S. 445, 454-456.)
>
>The record shows Phillippi was validated as a prison gang associate based on four source items.  Although Phillippi contends he was denied due process as to one of these items based on the Department's refusal to consider rebuttal evidence, the other three source items are sufficient to support Phillippi's validation.
>
>Three of the source items are confidential memoranda memorializing an investigator's interview with confidential informants.  The informants stated that Phillippi holds a leadership position among White inmates under the authority of the Aryan Brotherhood.  These memoranda are valid source items.  (See *In re Villa* (2013) 214 Cal.App.4th 954, 968-969.) Additionally, two of these items provided a "direct link" between Phillippi and validated gang members or associates.  Under our limited review of gang validation proceedings, the Department's decision is supported by some evidence.

(Lodgment No. 10 at 1-2.)

   3. *Clearly Established Supreme Court Law*

The amount of due process a segregated prisoner is entitled to under the Federal Constitution depends on whether the segregation is punitive or administrative. *Toussaint v. McCarthy*, 801 F.2d 1080, 1099 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. O'Connor*, 515 U.S. 472 (1995).  "California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.  Although there are some minimal legal limitations, the assignment of inmates within the California prisons is essentially a matter of administrative discretion." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003), quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 9th Cir. 1997) (citation and internal quotation marks omitted).  Thus, in general, a

prisoner's gang validation and his related transfer to a segregated security placement like SHU will meet federal due process requirements if he is provided some notice of the charges and evidence against him, an informal hearing with the opportunity to present his views, and there is "some evidence" to support the decision. *Bruce*, 351 F.3d at 1287-88 (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)); *see also Toussaint*, 801 F.2d at 1100-01.

> 4. *Failure to Provide an Impartial Hearing, Failure to Provide An Opportunity to Rebut the Allegations, Failure to Provide Access to Confidential Evidence, Failure to Provide Sufficient Notice of the Evidence, and Failure to Provide a Hearing with the Institution Gang Investigator (IGI) (Claims One, Two, and Three)*

In claim one, Phillippi contends he was not provided an impartial hearing because the same officers who investigated, collected and submitted the evidence of his gang involvement also conducted his gang validation hearing. (Pet. at 5 [ECF No. 1].) To the extent Phillippi is arguing he was not provided the kinds of protections and procedures afforded defendants in a criminal trial, the Supreme Court has recognized that trial rights do not apply in prison disciplinary proceedings. *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) (stating that "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all"). Moreover, Phillippi does not provide any evidence to support his conclusory statement that the hearing was impartial. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Further, as discussed above, Phillippi was entitled to only an informal nonadversary hearing, including "some notice of the charges against [him] and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Bruce*, 351 F.3d at 1287-88 (citing

1  *Toussaint*, 801 F.2d at 1099).  There is no evidence in the record to establish Phillippi's
2  gang validation hearing was not impartial.
3        The state court's denial of this claim, therefore, was neither contrary to, nor an
4  unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S.
5  at 412-13; 28 U.S.C. § 22554(d)(1).  Nor was it based on an unreasonable determination
6  of the facts.  28 U.S.C. § 2254(d)(2).
7        Phillippi contends in claim two that he was not given sufficient notice of the
8  evidence supporting his gang validation, the evidence supporting his validation was
9  unreliable, and he was not permitted to call witnesses or provide his own rebuttal
10 evidence.  (Pet. at 7 [ECF No. 1].)  The record shows that on June 30, 2011, Phillippi
11 received four Confidential Information Disclosure Forms (CIDF) from Sergeant Groth
12 notifying him that he was being investigated for "holding a position of leadership
13 amongst the White Inmate population for the purpose of conducting gang related
14 activities for "The Brand" (a common reference to the Aryan Brotherhood [AB] Prison
15 Gang) while you are housed in Calipatria State Prison's (CAL) Administrative
16 Segregation Unit (ASU)."  (Lodgment No. 56 at 17-23.)  Specifically, the CIDFs alleged:
17 (1) Phillippi "[had] been identified as conducting gang related activities under the
18 direction of a validated AB member James MICKEY D37676"; (2) during a search of
19 Phillippi's cell, officers had found "a complete listing of White, General population
20 inmates for the purpose of aiding and assisting in the furtherance of Aryan Brotherhood
21 (AB) related activities at Calipatria State Prison"; (3) Phillippi had been "identified as
22 holding a position of leadership among White, General Population under the authority of
23 the Aryan Brotherhood Prison Gang Associates/Members STRINGFELLOW E86331
24 and SHERWIN V15055 while housed in Administrative Segregation (ASU) at Calipatria
25 State Prison"; and (4) Phillippi had been identified as holding a position of leadership
26 among White, General Population inmates under the authority of the Aryan Brotherhood
27 Prison Gang while housed in Administrative Segregation (ASU) at Calipatria State
28 Prison."  (*Id.*)  Three source items were corroborated by having more than one source

independently provide the same information, and one source item was corroborated by a prison gang investigator. (*Id.*) On July 5, 2011, Phillippi was interviewed regarding the gang validation documents and gave a written rebuttal to each of the pieces of evidence. (*Id*. at 77-78.)

Due process "does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.3d at 1101. In order to satisfy due process requirements, however, California's Code of Regulations specifically provides that a prisoner subject to a gang validation investigation must be informed of each source item used to support his validation and provided all non-confidential information, not less than 24 hours before he is provided an interview, and an opportunity to be heard. Cal. Code Regs., tit. 15, § 3378(c)(6)(B), (C). The record establishes Phillippi was provided with these due process notice protections.

Phillippi also argues his validation is based on unreliable evidence because it was confidential and consisted of only "vague accusations of leadership, impossible to refute." (Pet. at 7 [ECF No. 1].) The United States Supreme Court stated in *Superintendent v. Hill* that, in the context of prison disciplinary proceedings, due process requires only that there be "some evidence" to support the charges. *Hill*, 472 U.S. at 446. The Supreme Court has not yet extended this principle to proceedings related to gang validation in prison. As Respondent notes, because no clearly established law addresses the amount of evidence, the type of evidence, and the reliability of evidence needed to establish gang validation in the prison context, the state court's resolution of Phillippi's claim that the evidence presented at the validation hearing was unreliable cannot be an unreasonable application of clearly established Supreme Court law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (stating that where no Supreme Court precedent controls a particular issue, a state court's decision cannot involve an unreasonable application of clearly established Supreme Court law).

The Ninth Circuit has found, however, that *Hill* applies to gang validation proceedings. *Bruce*, 351 F.3d at 1287-88. The Supreme Court has stated the "some evidence" standard of *Hill* is met if "there is any evidence in the record that could support the conclusion reached by the disciplinary board. [citations omitted]." *Hill*, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*.

The state court cited *Hill* as the controlling legal authority. (Lodgment No. 10 at 1.) Its decision is therefore not "contrary to" clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. The state court noted that there were "four source items" upon which Phillippi's validation was based, and that three of those items were confidential memoranda detailing Phillippi's "leadership position among White inmates under the authority of the Aryan Brotherhood," and that "two of [the] items provided a 'direct link' between Phillippi and validated gang members or associates." (*Id*. at 2.) This is sufficient to satisfy *Hill*'s standard. *See Hill*, 472 U.S. at 455. Under this Court's limited AEDPA review of the state court's decision, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254(d)(1). Nor was the state court's denial based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Phillippi also claims he was not permitted to present witnesses. In the context of disciplinary proceedings, the Supreme Court has specifically stated that while "[an] inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals . . . [p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence."

*See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (noting that "[i]f confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls," and that "[w]e think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination"). In the context of gang validation proceedings, the risk of physical harm, institutional disruption and reprisals is high, and prison authorities' restrictions on the calling of witnesses in such cases are well within Constitutional parameters.

The state court's denial of this claim, therefore, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 22554(d)(1). Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

In claims two and three, Phillippi contends he was not provided a chance to rebut the evidence against him, and that he "did not get a hearing with the decider (the IGI)" because "[t]he only persons who gave me my hearing was Sgt. Groth and c/o Duarte, the ones who investigated/collected the evidence." (Pet. at 7-8 [ECF No. 1].) He further states he requested that Lt. Trujillo, who Phillippi contends is "the IGI," preside over the hearing but the request was denied. (*Id*. at 8 [ECF No. 1].)

Evaluation of a prisoner's due process challenge to his gang validation and related housing requires identification of the "prison official [who] was the critical decisionmaker," and a determination whether the prisoner "had an opportunity to present his views to that official." *See Castro v. Terhune*, 712 F.3d 1304, 1308 (9th Cir 2013); *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990) (*Toussaint II*); *Stewart v. Alameida*, 418 F. Supp. 2d 1154, 1165 (N.D. Cal. 2006). In California, the official charged with deciding whether to validate an inmate as a gang member is the IGI. Thus, prior to validation as a gang member, a prisoner must be "inform[ed] . . . of the charges against [him] or their reasons for considering segregation" and given an informal

nonadversary hearing with an IGI. *Toussaint*, 801 F.2d at 1099. Before his validation package is submitted to the Office of Correctional Safety (OCS), "the subject of the investigation shall be interviewed by the IGI, or designee, and given an opportunity to be heard in regard to the source items used in the validation." Cal. Code Regs., tit. 15, § 3378(c)(6)(A). The interview must be documented and include a record of the prisoner's opinion concerning each source item. Cal. Code Regs., tit. 15,§ 3378(c)(6)(D).

Phillippi cites no authority for the proposition that he is entitled to the IGI of his choice. The record reflects that Sgt. Groth and Lt. Trujillo, both IGIs, reviewed the evidence supporting Phillippi's validation, including Phillippi's written rebuttal and interview, before validating him as a member of Aryan Brotherhood. (Lodgment No. 56 at 53.) Phillippi was afforded an opportunity to present his views to the appropriate decisionmaker. The state court's denial of this claim, therefore, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 22554(d)(1). Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Finally, Phillippi contends he was medically impaired during the validation hearing. (Pet. at 10 [ECF No.1].) There is no evidence in the record to support Phillippi's claim other than his conclusory allegation which is insufficient to warrant federal habeas corpus relief. *See James*, 24 F.3d at 26. The state court's denial of this claim, therefore, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 22554(d)(1). Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Phillippi was provided with the due process protections to which he was entitled at his gang validation hearing, and the state court's denial of those claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254(d)(1). Nor was the denial based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). The Court therefore recommends those claims be **DENIED**.

6. *The "Stigma" Claim*

In the petition filed on May 18, 2015, which was consolidated with the original petition, Phillippi claims that as a result of being validated as a gang member, he has been subjected to a litany of restrictions and that he is no longer eligible for parole.  (Pet. at 6 [ECF No. 20].)  He contends "[t]he stigma of being validated as an [Aryan Brotherhood] associate has created a governmentally imposed burden that significantly alters his legal status a matter of state law . . . without the proper level of Due Process mandated by the Federal Constitution."  (*Id.*)[2]  Respondent counters that to the extent Phillippi is seeking to establish a liberty interest in his gang validation, the claim is a new one that is procedurally defaulted because "the California Supreme Court specifically denied his state court petition as untimely."  (Answer at 21.)  Established precedent in this Circuit dictates that a court's decision on the issue of procedural default is to be informed by furthering "the interests of comity, federalism, and judicial efficiency."  *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).  Thus where, as here, deciding the merits of a claim proves to be less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice.  *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982)   Where there is no state court decision to which this Court can defer, the Court conducts a de novo review of the claim.  *Pirtle v. Morgan*, 313 F.3d 1060, 1067 (9th Cir. 2005) (holding that "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo").

California's regulations governing parole dictate that the Board of Parole Hearings (BPH) must consider a wide range of factors when deciding whether an inmate is suitable for parole, including, in addition to gang validation, the original crime, an inmate's social and criminal history, his conduct in prison, psychological evaluations, self-help

---

[2] Phillippi states a federal habeas corpus claim because he is seeking a "quantum change in the level of custody."  *See Nettles v. Grounds*, 788 F.3d 992, 1006 (9th Cir. 2015).

15

1  undertaken in prison, his remorse and understanding of the crime and its effects on the
2  victims, efforts at rehabilitation and plans for parole.  Cal.Code Regs. Tit. 15, § 2402(b)-
3  (d).  As the Supreme Court has noted, decisions about whether to parole an inmate are
4  "an amalgam of elements, some of which are factual but many of which are purely
5  subjective appraisals by the Board members based on their experience with the difficult
6  task of evaluating the advisability of parole release."  *Greenholtz v. Inmates of Nebraska*
7  *Corr. & Penal Complex*, 442 U.S. 1, 9-10 (1979).

8  Phillippi was initially denied parole in August of 2013 for five years.  (*See*
9  Lodgment No. 61 at 16.)  In 2014, he petitioned the BPH to advance his parole suitability
10 hearing.  (*Id.*)  In denying his petition to advance, the BPH stated as follows:

> In denying parole, the panel determined that Mr. Phillippi was currently dangerous first in looking at his status as a validated affiliate with a violent prison gang.  The panel discussed the ideas of debriefing.  The panel noted the inmate's high placement score with 14/15 RVRS [rules violations reports], the most recent four years prior.  The panel noted the moderate to high CRA [comprehensive risk assessment].  The panel noted the inmate still needed to upgrade educationally and vocationally.  The panel noted the inmate was still in the process of identifying and avoiding the potential for impulsive decision making.
>
> In support of his petition, the inmate noted a recent 115 [disciplinary conviction] was expunged by the court, that he had completed the Board requested self-help course, and the inmate had requested therapy and was advised by the clinician that therapy was not needed.  Self-help noted since the last hearing included the first prep life-skills module, and the creative options correspondence course on introduction to the 12 steps.
>
> Mr. Phillippi's efforts demonstrate that he had begun to address the panel's concerns.  However, he remains a validated [Aryan Brotherhood] affiliate with an indeterminate SHU [security housing unit] term and a 116 classification score.  His self-help has been limited, perhaps due at least in part to his prior decisions resulting in his SHU housing.  His CRA is still moderate to high, and he has not upgraded vocationally or educationally.  The new information he submitted does not satisfy the statute and petition is denied.

28 (Lodgment No. 61 at 16.)

Thus, the fact that Phillippi has been validated as an Aryan Brotherhood gang member is merely one factor the BPH has and will continue to consider in its decision making process. The record does not support Phillippi's contention that he is "no longer eligible for parole" simply because he is a validated Aryan Brotherhood affiliate.

Phillippi attempts to analogize the effect his validation will have on the conditions of his prison life, the possibility of paroling, and restrictions he may face upon being granted parole with the Ninth Circuit's decision in *Neal v. Shimoda*, 131 F.3d 818 (9th Cir 1997). In *Neal*, a civil rights case brought pursuant to 42 U.S.C. § 1983, the Court concluded that labeling prisoners as "sex offenders" without a hearing and requiring them to complete a sex offender treatment program in order to be eligible for parole violated the prisoner's due process rights. Phillippi claims that like the sex offenders in *Neal*, he is no longer eligible to earn good time credits, is no longer eligible for parole, has been labeled as being part of a race-based prison gang, must graduate from the "step down" program in order to earn good time credits or be eligible for parole, must register as a "gang offender" when released, will be labeled a "street terrorist" and be subjected to enhanced sentences if he commits a new crime, and will be subject to enhanced parole conditions when paroled. (Pet. at 6 [ECF No. 20].)

Phillippi's case is distinguishable from *Neal*. The statutory scheme in *Neal* "authorize[d] correctional officials to classify certain inmates as sex offenders without a hearing and mandates their completion of an extensive treatment program, which includes their confession to past sex offenses, as a precondition to parole eligibility." *Neal*, 131 F.3d at 828-29. In contrast, Phillippi was afforded a hearing and, as noted above, he is not "*completely* ineligible for parole if the treatment program is not satisfactorily completed . . . ." *Id.* at 829. Moreover, even if Phillippi's situation was similar to the plaintiffs in *Neal*, as discussed above he has already received what the Ninth Circuit indicated he would be entitled to: advanced written notice of the claimed violation and written statement of the fact finders as to the evidence relied upon and the reasons for the . . . actions taken." *Id.* at 830, quoting *Wolff*, 418 U.S. at 563 (internal

1  quotation marks omitted).  For all the foregoing reasons, the Court recommends this
2  claim be **DENIED.**

## IV.     CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Dana M. Sabraw under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.

Further, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered DENYING the Petition for Writ of Habeas Corpus and request for evidentiary hearing.

IT IS ORDERED that no later than **February 1, 2016** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **February 10, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Date:   January 12, 2016

*[signature]*

Hon. Mitchell D. Dembin
United States Magistrate Judge